¶ 43. I am authorized to state that Justice Robinson joins this dissent.

2013 VT 114

## State of Vermont v. Brian K. LeClair

[88 A.3d 1186]

Nos. 13-049 & 13-050

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed November 27, 2013

*William H. Sorrell*, Attorney General, and *David Tartter* and *John Treadwell*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Matthew Valerio*, Defender General, and *Seth Lipschutz*, Prisoners' Rights Office, Montpelier, and *Brian LeClair*, Pro Se, St. Johnsbury, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals the superior court's denial of his motion to modify his sentence. He contends that the court erred in failing to award credit for time served. We reverse the superior court's decision and grant defendant credit against the controlling burglary sentence for the time he spent in jail between arrest and sentencing on the later charges.

¶ 2. On March 24, 2010, defendant was arrested and charged in Docket Number 1098-3-10 Cncr with one count of burglary. Bail was set at $20,000. Defendant was held for lack of bail from March 24, 2010 until December 30, 2010, when bail was reduced to zero and he was released subject to several conditions of release, including that he follow all conditions set by the Chittenden County Adult Drug Treatment Court (ADTC), to

which he had been referred on December 20, 2010. On February 10, 2011, pursuant to the parties' plea agreement, the court accepted defendant's guilty plea to the burglary charge with the understanding that if defendant successfully completed ADTC, he would be given a sentence of two-to-five years, all suspended with immediate discharge from probation, but if he was terminated from ADTC, the State could seek a sentence of five-to-fifteen years to serve, with defendant free to argue for a lesser sentence.

¶ 3. On April 2, 2012, while still participating in ADTC, defendant was charged in Docket Number 1129-4-12 Cncr with first-degree unlawful restraint, aggravated operation of a vehicle without the owner's consent, reckless or grossly negligent driving, burglary, and unlawful trespass. Bail was set at $50,000 on the new charges, but was not reset for the 2010 burglary charge. Defendant was held for lack of bail until September 18, 2012, when he was sentenced on the new charges and resentenced on the burglary charge.

¶ 4. As a result of defendant's incarceration, his participation in ADTC ceased. In a motion dated May 1, 2012 but not filed with the superior court until August 1, 2012, the State sought defendant's termination from ADTC. On August 10, 2012, the court terminated defendant's enrollment in ADTC, triggering sentencing on the predicate burglary offense. On September 18, 2012, as part of a global resolution of the charges he faced, defendant was sentenced to serve three-to-five years for the 2010 burglary offense, with credit for time served, including time spent in residential treatment and stemming from ADTC sanctions.

¶ 5. That same day, pursuant to the parties' plea agreement, defendant pled guilty to three of the six 2012 charges. Defendant received a sentence of two-to-five years for those offenses, to be served concurrently with the controlling three-to-five-year sentence for the 2010 burglary conviction, with credit for time served. The Department of Corrections gave defendant 287 days of credit against the sentence for the 2010 burglary conviction, representing, for the most part, the period he was held without bail on the 2010 burglary charge before being released in December 2010. The Department also gave defendant 170 days of credit against the sentence for the 2012 convictions for time served between March 30, 2012, when he was arrested and held on the 2012 charges, and September 18, 2012, the date of sentencing on all of his pending charges. The Department did not, however, give

defendant the 170-day credit against the minimum on his controlling three-to-five-year sentence for the 2010 burglary conviction.

¶ 6. On November 7, 2012, defendant filed a motion to correct or modify his sentence, requesting credit against his controlling sentence for the 170 days he spent in custody between his arrest and sentencing on the 2012 charges. The superior court denied the motion, stating in a motion-reaction form that "defendant was not held [in 2012] for lack of bail on [the 2010 burglary offense] and therefore is not entitled to credit on that docket." Defendant appeals, arguing that he should have received credit for the 170 days against each of the concurrent sentences. He contends that the court's failure to grant him the 170-day credit on the controlling sentence resulted in a de facto consecutive sentence for that period of time, even though the court imposed the sentences to run concurrently. In response, the State contends that the court did not err in denying defendant's motion to modify his sentence because defendant was held during the disputed 170-day period "in connection with" only the 2012 charges and not the 2010 burglary conviction. See 13 V.S.A. § 7031(b) (2012) ("The court shall give the person credit toward service of his or her sentence for any days spent in custody in connection with the offense for which the sentence was imposed.").[*]

---

[*] Section 7031(b) of Title 13 was amended effective April 3, 2013. 2013, No. 4, § 1. Because the statute was amended after defendant was sentenced on all pending charges and, in any case, "neither defines an offense nor prescribes a punishment," *State v. Blondin*, 164 Vt. 55, 57 n.1, 665 A.2d 587, 589 n.1 (1995), the earlier version of the statute cited above governs this case. See 1 V.S.A. § 214(c) ("If the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment."); *State v. Barron*, 2011 VT 2, ¶ 38, 189 Vt. 193, 16 A.3d 620 (stating that § 214(c) operates "only if the sentence is not imposed 'prior to the date of the amendment'" (quoting § 214(c))). Defendant stated at oral argument that he is entitled to the 170-day credit against his controlling sentence under either the old or new version of the statute. In effect, he argued that the amended version is a clarification of existing law and provides further evidence of the correctness of his position. See *State v. Kenvin*, 2011 VT 123, ¶ 24, 191 Vt. 30, 38 A.3d 26 (stating that while we presume Legislature intended to change meaning of statute it amends, we will recognize clarification of existing law when circumstances clearly indicate it was intended). We need not consider whether the new version is a clarification of existing law or an amendment of the prior version of the statute insofar as we conclude that defendant is entitled to the additional 170 days of credit under our case law interpreting the prior version of the law.

¶ 7. ■ We have recently clarified that one of the ways a defendant can challenge the Department's final calculation of credit for time served is through review of the sentence in the superior court "under Vermont Rule of Criminal Procedure 35(a) to determine whether the sentence is illegal under 13 V.S.A. § 7031(b) because it fails to give defendant credit for days spent in custody in connection with the crime(s) for which defendant is sentenced." *State v. Sommer*, 2011 VT 59, ¶ 8, 190 Vt. 236, 27 A.3d 1059. When a defendant moves for sentence reconsideration based on an alleged illegality of the sentence, the issue is a question of law that we review de novo. *State v. Oscarson*, 2006 VT 30, ¶ 7, 179 Vt. 442, 898 A.2d 123.

¶ 8. In support of the superior court's decision, the State argues that this case is governed by *Marden v. Walton*, 142 Vt. 204, 455 A.2d 321 (1982), in which the petitioner had been released on probation for an earlier crime when he was arrested and held for lack of bail on a subsequent offense. The petitioner's probation was later revoked, but not until after his conviction for the second sentence, which was imposed consecutive to the first sentence. While acknowledging that § 7031 is a remedial statute that must be accorded a liberal construction protective of defendants' rights, we held that the petitioner in that case was not entitled to credit for time served towards the first sentence for the period of time during which he was held for lack of bail on the second offense. In so holding, we reasoned as follows:

> In the case before us the limiting condition of "connection" is not satisfied. The time spent in custody, for which credit is claimed by petitioner, has no relation to, nor any *connection with*, [the defendant's earlier] offense or the resulting four- to-eight-year sentence. On the contrary, his incarceration [for the period in question], was based solely and entirely on the bail mittimus resulting from the [later] criminal offense for which he was subsequently convicted. He was entitled to, and in fact received, credit for that period, but only in connection with the sentence imposed for the latter offense.

*Id.* at 207-08, 455 A.2d at 322.

¶ 9. ■ Although our reasoning in *Marden* did not rely on whether the sentences for the earlier and later convictions were imposed consecutively or concurrently, the sentences in that case

were in fact imposed consecutively, which makes all the difference under our subsequent decision in *Blondin*. That case involved a defendant who was on parole for a murder conviction when he was arrested for, and eventually convicted of, new offenses. The defendant's parole was revoked as a result of his having been charged with the new offenses, and he was later convicted on the new charges, resulting in a new sentence to be served consecutively to the earlier sentence. We declined to grant defendant double credit against each of the sentences for the time served between his arrest and conviction on the new charges, reasoning that doing so "would, in effect, make the underlying and new sentences concurrent for the six-month period" in question. *Blondin*, 164 Vt. at 56, 665 A.2d at 589. Accordingly, we held as follows:

> [W]hen a defendant is incarcerated based on conduct that leads both to revocation of probation or parole and to conviction on new charges, the time spent in jail before the second sentence is imposed should be credited toward only the first sentence if the second sentence is imposed consecutively, but toward both sentences if the second sentence is imposed concurrently.

*Id.* at 61, 665 A.2d at 592. Thus, the crucial factor under *Blondin* is whether the earlier and later sentences are to be served concurrently or consecutively. *Id.*

¶ 10. The State acknowledges our holding in *Blondin* but contends that *Blondin* does not govern this case insofar as ADTC jurisdiction is not analogous to probation or parole situations, in which defendants are subject to control by the Department of Corrections and more intense scrutiny. As noted, our holding in *Blondin* turns more on the concurrence of the sentences than the nature of probation or parole. However, even if the nature of probation or parole was central to that decision, the constraints of ADTC are sufficiently analogous to probation to warrant invocation of the *Blondin* holding.

¶ 11. Defendants convicted of drug-related crimes pursuant to their agreement to participate in ADTC are subject to various restrictions analogous to restrictions imposed on probationers and parolees. They are required to comply with orders from the monitoring judge and to follow the treatment plan set up by the case manager and treatment team. To successfully complete

ADTC, which lasts anywhere from ten-to-eighteen months, defendants must satisfy all of the program requirements during five separate program stages involving a progression of steps aimed at overcoming the defendant's drug dependence. Those stages, to a lesser or greater extent, require regular court appearances, frequent random drug tests, mandatory daily check-ins, attendance at various group counseling and community-support sessions, and regular contact with the case manager and the probation officer, if applicable. There are also often conditions requiring the defendant to obtain housing, employment, and/or a driver's license. Failure to comply with the program requirements results in graduated sanctions that include increased curfew, community service, termination from ADTC, incarceration, and imposition of a new, more onerous sentence following termination from the program. In short, participating in ADTC is plainly analogous to serving a probationary sentence.

¶ 12. Another one of the conditions of ADTC is that participants may not commit any additional criminal offenses or break any laws. Although the State did not seek, and the court did not order, defendant's termination from ADTC until August 2012, the State's request for ADTC termination was dated on the first day of the first month following defendant's arraignment on the additional charges, and defendant was not able to, and did not, participate in the program at any time following his arrest on those charges. Eventually, in addition to being sentenced on the new charges, defendant received an increased sentence on the earlier charge as the result of his arrest on the new charges and termination from ADTC. Most importantly, the court imposed those two sentences to run concurrently, and thus, under *Blondin*, defendant was entitled to credit against both sentences for the time he was incarcerated following his arrest on the new charges.

¶ 13. ▆ ▆ As we noted in *Blondin*, denying or granting credit in concurrent-sentence situations like the instant one based on when revocation proceedings or resentencing was initiated or finalized would be illogical and unfair, as it would result in credit being awarded depending on factors beyond the court's control, including how quickly or slowly the State acted in prosecuting the defendant. *Id.* at 61, 665 A.2d at 591-92. Accordingly, defendant is entitled to credit against each of the concurrent sentences for the

entire period he spent in jail between arrest and sentencing on the additional charges.

*Reversed and remanded for resentencing consistent with this opinion.*